IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF DELAWARE


UNITED STATES OF AMERICA          :          Criminal Action No. 99-14-04 (JJF)

                                                  :

                    vs.                          :

                                                  :

LEROY TURNER, JR.                          :


### DEFENDANT'S RESENTENCING MEMORANDUM


Defendant Leroy Turner, Jr., by his attorney, Thomas A. Dreyer, Esquire, hereby respectfully submits a Resentencing Memorandum setting forth all the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives contained in 18 U.S.C. Section 3553(a).

On January 12, 1999, Mr. Turner was indicted in the United States District Court for the District of Delaware.   On April 5, 1999, he pled guilty to Conspiracy to distribute cocaine base.   On July 7, 1999, the Honorable Joseph J. Longobardi sentenced him to imprisonment of 188 months (the applicable sentencing guideline range was 151 to 188 months) and to supervised release of 5 years.

On July 20, 1999, Mr. Turner filed a pro se Notice of Appeal.   The United States Court of Appeals for the Third Circuit subsequently dismissed the appeal as untimely.

On August 18, 1999, the instant matter was reassigned to the Honorable Joseph J. Farnan, Jr.

In April 2001, Mr. Turner filed a pro se Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.   On April 6, 2004,

following other filings by the parties, Judge Farnan ruled that Mr. Turner's prior counsel was ineffective in failing to file a timely Notice of Appeal and reinstated his right to appeal.   On April 14, 2004, a timely Notice of Appeal was filed.

On April 29, 2005, the United States Court of Appeals for the Third Circuit vacated the judgment of sentence and remanded this case for resentencing to the district court. Resentencing is scheduled for July 11, 2005.

Mr. Turner has been incarcerated since his arrest on January 26, 1999.   He will have spent 77.5 months in the jail as of the date of resentencing.   A sentence of 120 month is sufficient but not greater than necessary to comply with the provisions of Section 3553(a).

Mr. Turner has strong family ties.   He was a minor participant in the criminal activity.   He used his jail time to rehabilitate himself.   He acquired a GED and took several college level courses.   He also completed numerous other types of programs.   Moreover, his 188-month sentence indicates an unwarranted sentencing disparity because his offense involved the 100 to 1 crack-to-powder-cocaine ratio and because, even though he was a minor participant, he received the longest sentence of all the people involved in the offense.

## Sentencing Under *Booker*

On January 12, 2005, the United States Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S.Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), apply to the Federal Sentencing Guidelines ("FSG").   United States v. Booker, 125 S.Ct. 738, 756 (2005).   Given the mandatory nature of the FSG, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the" FSG in the cases before the Court.   ID. at 751.   Accordingly, it reaffirmed its holding in Apprendi and concluded that

> [a]ny fact (other than a prior conviction) which is necessary to
> support a sentence exceeding the maximum authorized by the facts
> established by a plea of guilty or a jury verdict must be admitted by
> the defendant or proved to a jury beyond a reasonable doubt.

Id. At 756.

Based on this conclusion, the Supreme Court further found that those provisions of the federal Sentencing Reform Act of 1984 ("SRA") which make the FSG mandatory (18 U.S.C. Section 3553(b)(1)) and which rely upon the mandatory nature of the FSG (18 U.S.C. Section 3742(e)) are incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. It thus excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. At 757.

> As revised by Booker, the SRA now
>
> requires a sentencing court to consider Guideline ranges, see 18
> U.S.C.A. Section 3553(a)(4)(Supp.2004), but it permits the court to
> tailor the sentence in light of other statutory concerns as well, see
> Section 3553(a).

Booker, 125 S.Ct. at 757. Therefore, Booker permits sentencing courts to treat the FSG as just one of the several equally important factors outlined in 18 U.S.C. Section 3553(a). See Simon v. United States, 361 F.Supp.2d 35, 40 (E.D.N.Y. 2005) (Sifton, J.) (the FSG are advisory and entitled to the same weight accorded to each other factor enumerated in Section 3553(a)).

The primary directive in Section 3553(a) is for sentencing courts to 'impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) lists these purposes as:

> (A)  to reflect the seriousness of the offense, to promote respect for
>        the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and,

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the effective manner.

Section 3553(a) further directs sentencing courts to consider the following factors in determining the minimally sufficient sentence:

1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

2)  the kinds of sentences available;

3)  the kinds of sentence and the sentencing range established by the FSG;

4)  any pertinent policy statement issued by the Sentencing Commission which is effect on the date the defendant is sentenced;

5)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,

6)  the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1) and (a)(3) through (a)(7).

Sentencing courts are given discretion by other statutory provisions as well. Under 18 U.S.C. Section 3582(a), imposition of a term of incarceration is subject to the following limitation:   in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to 'recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation".   (Emphasis added.)

Under 18 U.S.C. Section 3661, "*No limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence". (Emphasis added.)   This statutory language clearly overrides the now advisory policy statements contained in Part H of the FSG which list as "not ordinarily relevant" to sentencing numerous

factors such as the defendant's age, educational and vocational skills, mental and emotional condition, drugs or alcohol dependence, and lack of guidance as a youth.   *See* U.S.S.G. Section 5H1.  See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account the fact that the defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since the rate of recidivism decreases with age and citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines (May 2004); also taking into account the defendant's strong family ties, his need for treatment for his serious addiction to crack cocaine, his serious medical problems, and his honorable discharge from the United States Army); United States v. Naylor, 359 F.Supp.2d 521 (W.D.Va. 2005) (Jones, J.) (concluding that a sentence below the career offender guideline range was reasonable, in part, because of the defendant's youth when he committed the predicate offenses (age 17) and noting that, in Roper v. Simmons, 125 S.Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in the moral responsibility for crime between adults and juveniles).

According to the directives of Booker and Section 3553(a), sentencing courts may no longer apply the FSG in an uncritical manner.   Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the Section 3553(a) factors, many of which the guidelines either reject or ignore."   United States v. Ranum, 353 F.Supp.2d 984, 985-86 (E.D.Wisc. 2005) (Adelman, J.).   As another district court has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in

Booker." United States v. Jaber, 362 F.Supp.2d 365, 371-72 (D.Mass. 2005) (Gertner, J.). See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. 2005) (an advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains this point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so

.
Booker, 125 S.Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority in Booker thought that the FSG had to be given "heavy weight", its opinion would have said so. The remedial majority clearly understood that giving any extra weight to the guideline range violates the Sixth Amendment.

In conclusion, sentencing courts must now consider all of the Section 3553(a) factors, and not just the FSG, in determining a sentence which is sufficient but not greater than necessary to meet the goals of sentencing. Moreover, if the FSG conflict with the other sentencing factors enumerated in Section 3553(a), these statutory sentencing factors should generally trump the FSG. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (listing the four purposes of sentencing as retribution, deterrence, incapacitation and rehabilitation and arguing that since Section 3553(a) requires that a sentence be no greater than necessary to meet these purposes, the imposition of a sentence greater than necessary to meet them violates the statute and is reversible, even if it is

within the guideline range).

### Application of the Statutory Sentencing Factors to the Instant Case

The following factors must be considered in this case in determining what length of sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing:

1. **The Nature and Circumstances of the Offense and the History and Characteristics of The Offender**

   **(A)   Nature and Circumstances of the Offense**

   See the narrative contained infra in Section 5(B) of this memorandum.

   **(B)   History and Characteristics of Mr. Turner**

   Mr. Turner is a 35-year-old African-American man.

   Mr. Turner accepted responsibility for his involvement in the offense.   Judge Longobardi concluded that he was a minor participant in it.

   Since Mr. Turner was incarcerated on January 26, 1999, he has made many substantive efforts to end his prior life of crime and start a new life as a law-abiding citizen of the United States.   He obtained a GED on October 14, 1999.   He completed numerous classes and programs, including college courses in Marketing and Sales Management.   He is currently enrolled in college courses involving Legal Research, Small Businesses and the Trucking Business.

   In addition, Mr. Turner completed the following programs:

   1. The Lifestyles and Values Program – 10/12/99
   2. Typing I – 7/25/00
   3. Parenting Skills Program – Level I – 8/14/00
   4. "Just Relax" Stress Management Program – 8/15/00
   5. Communication Skills – 12/11/00
   6. Legal Research – 12/26/00
   7. Relapse (Prison) Prevention Program – 2/5/01
   8. Residential Blueprint Reading – 2/20/01
   9. Solution Focused Recovery Program – 10/26/01

10.  Non-Residential Drug Abuse Treatment Program – 12/28/01
11.  Arabic – 3/17/02
12.  Mandatory Drug Abuse Education Program – 5/21/02
13.  Microsoft Word 2000 – 6/4/02
14.  A.C.E. Walking 2003 – 6/3/03
15.  Stretching Class – 4/30/04
16.  Barber Styling Class – 6/12/04
17.  Suicide Companion Program – 11/1/04
18.  Victim Impact Group – 3/3/05
19.  Legal Research – 3/22/05
20.  Spinning – 3/30/05

The completion of these numerous courses, classes and program demonstrates that he has made major strides in rehabilitating himself.

Mr. Turner's mother is Jeanette Lolley, a 71-year-old woman whose significant vascular disease makes it difficult for her to walk.   She also suffers from heart disease and arthritis.   She had heart bypass surgery on September 14, 2004 and was on a ventilator until June 1, 2005.

Mr. Turner has five children:   Shadaliera is 17; Denisha is 16; Nyrie is 9, Dominque is 8; and Saladin is 7.   Nyrie was diagnosed with Juvenile Onset Diabetes Mellitus on February 22, 2005.   Four of his children have asthma.

Mr. Turner is very close to his family!

**2.  The Kinds of Sentences Available**

Since Mr. Turner pled guilty to a Class A felony, a sentence of imprisonment is available.  18 U.S.C. Section 3581.   The imposition of a fine is also available.   18 U.S.C. Section 3571.   Probation is not an option.   18 U.S.C. Section 3561.

**3.  The Sentencing Range Established by the Sentencing Commission**

When Mr. Turner was sentenced on July 7, 1999, the applicable range under the FSG were calculated as follows:

1. A base offense level of 34 for 150-500 grams of cocaine base pursuant to U.S.S.G. Section 2D1.1; a two-level reduction based on his conduct as a minor participant pursuant to U.S.S.G. Section 3B1.2(b); a three-level reduction for his acceptance of responsibility pursuant to U.S.S.G. Section 3E1.1; and a total offense level of 29.

2. A Criminal History Category of VI.

3. A range of imprisonment of 151 to 188 months.

See Paragraphs 21-32, 33-45, and 62 of the Revised Presentence Investigation Report ("PSI").

In Booker, the Supreme Court excised 18 U.S.C. Section 3553(b), the portion of the federal sentencing statute which made it mandatory for courts to sentence within a particular sentencing guideline range. Booker, 125 S.Ct. at 756. This renders the FSG advisory. Id. The advisory guideline range for imprisonment in this case is thus 151 to 188 months.

**4. Pertinent Policy Statement**

There are no pertinent policy statements.

**5. The Need to Avoid Unwarranted Sentencing Disparities**

**(A) Crack Cocaine**

One of the primary purposes of the FSG is to reduce unwarranted sentencing disparity between similarly situated defendants across the United States. According to their Introduction, ". . . Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders". (Emphasis in original.)

Mr. Turner's offense involved cocaine base, commonly referred to as "crack". The FSG establish a 100 to 1 quantity ratio of powder cocaine to crack. According to the United States Sentencing Commission, this ratio leads to a substantial disparity which has

increased the gap in average sentences between racial groups and this disparity is unwarranted because "the harms associated with crack cocaine do not justify its substantially harsher treatment compared to powder cocaine".   See United States Sentencing Commission, <u>Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Criminal Justice System is Achieving the Goals of Sentencing Reform</u>, pp. xv-xvi (Nov. 2004).   Therefore, the Commission's own findings give tremendous support to Mr. Turner's request for a reduced sentence.

Sentences below the applicable guideline ranges were imposed as reasonable in several recent crack cases.   See <u>Simon v. United States</u>, 361 F.Supp.2d 35, 44-47 (E.D.N.Y. 2005) (Sifton, J.) (imposing a sentence below the guideline range for crack primarily because of the disparity between it and powder cocaine); <u>United States v. Harris</u>, 2005 U.S. Dist. LEXIS 3958 (D.D.C. Mar. 7, 2005) (Robertson, J.) (the Sentencing Commission's findings regarding the crack/powder disparity "are sound authority" for concluding that guideline ranges for crack are "greater than necessary").

In <u>United States v. Smith</u>, 359 F.Supp.2d 771, 777-82 (E.D.Wisc. 2005), the Honorable Lynn Adelman wrote that the Commission has concluded that its data do not support the assumptions upon which the 100 to 1 ratio was based.   First, Congress intended to target serious drug dealers; the data show that 67% of federal crack defendants are street level dealers. Second, Congress believed that crack was associated with other harmful conduct; the data indicate aggravating conduct occurs in only a small minority of crack cases.   Third, Congress thought that crack was much more addictive than powder cocaine; the data demonstrate that crack is not more dangerous than powder cocaine.   Judge Adelman then stated "that the unjustifiably harsh crack penalties disproportionately impact on black defendants".   She

concluded:

> Primarily as the result of the different penalties for crack and powder cocaine, and contrary to one of the Sentencing Reform Act's primary goals, the sentencing guidelines have led to increased disparity between the sentences of blacks and whites.  Before the guidelines took effect, white federal defendants received an average sentence of 51 months and blacks an average of 55 months.   After the guidelines took effect, the average sentence for whites dropped to 50 months, but the average sentence for blacks increased to 71 months. (Citation omitted.)

The total amount of crack attributed to Mr. Turner was 170.6 grams; this resulted in a base offense level of 34.   See Paragraph 21 of the PSI.   The guideline range was 151 to 188 months.   Had he been charged with 170.6 grams of powder cocaine, the base offense level would have been only 18 (U.S.S.G. Section 2D1.1(c)(11)), the total offense level would have been only 13 (because of the two-level reduction for minor participant and the three-level reduction for acceptance of responsibility) and, with Criminal History Category VI, the applicable guideline range would have been only 33 to 41 months.

The Court can avoid the unwarranted sentence disparity caused by the 100 to 1 crack-to-powder-cocaine ratio by resentencing Mr. Turner below the guideline range of 155 to 188 months.   Such a sentence is reasonable as it better reflects the current understanding of crack and the harms associated with it as outlined by the Commission and by Judge Adelman in United States v. Smith, supra.

### (B)   The Sentences Imposed on Mr. Turner's Co-Defendants

On June 3, 1997, Michael Smith bought 52 grams of crack from Co-Defendant Jimmie Wilkerson at Jimmy and Jim's Variety Store, a convenience store located in Wilmington. Co-Defendant Calvin Bey assisted Mr. Wilkerson in this transaction.   Mr. Smith was unable to pay Mr. Wilkinson the full purchase price for the crack.

On June 4, 1997, Mr. Smith met with Mr. Wilkerson and Mr. Turner outside Jimmy and Jim's Variety Store and handed Mr. Turner $900.00 in order to complete payment for the purchase of the crack on the previous day.

Mr. Smith then asked Mr. Wilkerson for an additional two ounces of crack.   Mr. Wilkerson agreed and instructed Mr. Turner to obtain this crack for Mr. Smith.   Later that day, Mr. Turner returned to the store and gave 53 grams of crack to Mr. Smith.   Mr. Smith handed Mr. Turner $500.00 as a partial payment.   Later that day, Mr. Smith came back to the store and made the final payment of $700.00 for this purchase directly to Mr. Wilkerson.

According to Paragraph 25 of the PSI, Mr. Turner was a minor participant in this criminal activity on the following grounds:

> By virtue of the evidence presented, Mr. Turner's role in the documented transactions can be characterized as nothing more than a go-between. The defendant took part in portions of each of the transactions, but is clearly not a source of supply, a major beneficiary, or a wholesale dealer. In comparison to his codefendants and the related case, the defendant's role in the conspiracy can certainly be categorized as less culpable than these individuals.   Based on this information, a two-level reduction to the Base Offense Level is appropriate.

> The individuals involved in this drug activity received the following jail terms:

> 1. Mr. Bey – 48 months – 6/22/99 – Judge Longobardi
> 2. Mr. Turner – 188 months – 7/7/99 – Judge Longobardi
> 3. Mr. Wilkerson – 180 months – 12/1/99 – Judge Farnan
> 4. Mr. Porter – 60 months – 12/21/99 – Judge Farnan
> 5. Mr. Smith – 584 days – 3/1/00 – Judge Robinson

It is clear that there is an unwarranted disparity in these sentences.   Even though Mr. Turner was a minor participant, he received the longest term of imprisonment!   His 188-month sentence is much longer than the sentences imposed on Messrs. Bey, Porter and Smith and it is 8 months longer than that imposed on Mr. Wilkerson.

The Court can correct this unwarranted disparity in the sentences imposed on the

actors in the drug activity by resentencing Mr. Turner below the guideline range of 151 to 188

months.   Such a sentence is reasonable as it recognizes and gives real meaning to the fact that he

was a minor participant in this criminal activity.

**6.  The Need to Provide Restitution to Any Victims of the Offense**

There is no identifiable victim in this case.   See Paragraph 15 of the PSI.

**Proposed "Statement of Reasons Pursuant to 18 U.S.C. Section
3553(c)" for Sentence Below Guideline Range**

The sentence departs below the guideline range for the following reasons:

1.  Mr. Turner is an African-American man with strong family ties.   His ill
    mother and daughter need him at home as soon as possible to help with
    their care.

2.  While incarcerated, he obtained a GED, he completed several college courses
    and is currently taking several other college courses, and he completed
    numerous other programs.

3.  While incarcerated, he helped other inmates as a suicide companion.

4.   He was a minor participant.

5.  His original sentence indicates two types of unwarranted sentencing
    disparity.   First, his offense involved crack and, as a result, he was penalized
    by the 100 to 1 crack-to-powder-cocaine ratio.   Second, even though he was a
    minor participant, he received the longest prison term of any individual
    indicted in this drug activity.

<u>**Conclusion**</u>

For all the foregoing reasons, Mr. Turner respectfully submits that a sentence of

120 months is sufficient, but not greater than necessary, to comply with the statutory directives

set forth in 18 U.S.C. Section 3553(a).   He hereby requests a sentence of 120 months.

_____
Thomas A. Dreyer, Esquire
6 Dickinson Drive
Building 100 – Suite 106
Chadds Ford, PA  19317
610-358-4454
Attorney for Defendant Leroy Turner, Jr.

Dated: _____